FILED

11 NOV 10 PM 2:48

MIDDLE DISTRICT OF FLORIDA
TAMPA, FLORIDA

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**MATHIS DUDLEY**

**Plaintiff,**

**vs.** **CASE NO.:** 8:11 cv 2552 T 26 MAP

**ERIC K. SHINSEKI, SECRETARY,**
**DEPARTMENT OF VETERANS AFFAIRS,**

**Defendant.**

______________________________/

**COMPLAINT AND DEMAND FOR JURY TRIAL**
**INJUNCTIVE RELIEF REQUESTED**

Plaintiff, Mathis Dudley ("Dudley"), complains of Defendant, Eric K. Shinseki, Secretary, Department of Veterans Affairs ("Secretary"), as follows:

## JURISDICTION

1. This court has jurisdiction of the claims in this complaint pursuant to Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, and 28 U.S.C. § 1331.

2. Plaintiff has complied with all jurisdictional prerequisites to action under Title VII of the Civil Rights Act of 1964 as amended including having exhausted or being excused of any required administrative remedies.

## PARTIES

3. Bay Pines VA Health Care System ("Bay Pines") is a Veterans Administration ("VA") hospital and medical center with related services. It was directed by a Medical Center Director, who at times relevant was Mr. Wallace Hopkins ("Hopkins"). Kristine Brown ("Brown") is presently and at relevant times was the Assistant Director at Bay Pines. Bay Pines is broken down into various services.

$350 TPA Clerk

4. Bay Pines has its own engineering service. Stephen Boyd ("Boyd") is the Chief of the engineering service at Bay Pines. He is supervised by Brown and by William Keith Neely and ultimately by Hopkins while Hopkins was there. At relevant times, Eric Plaisance ("Plaisance") has been the Supervisory Biomedical Engineer at Bay Pines. Mark Southworth ("Southworth"), at relevant times, was a supervisor in the Electronics Systems and Equipment Section. David Murray ("Murray") was the Electronic Systems and Equipment Shop supervisor and his formal title was maintenance foreman. Jim Kee ("Kee") is and at all relevant times was an electronics technician. Phil Schmitt ("Schmitt") is and at all relevant times was an engineering technician. Robert Kennedy ("Kennedy") is and at all relevant times was an engineering technician. Tony Smith ("Smith") is and at all relevant times was an electronics technician. Each of the employees identified in this paragraph are white.

5. Each of the employees of the VA or Bay Pines described herein was employed by the Defendant or Bay Pines and was acting within the course and scope of his or her employment with the Defendant or Bay Pines at the time of the conduct described herein.

6. Dudley, a resident of Wimauma, Florida, is, and at all relevant times was, an electronics technician, GS-0856-11 in the Engineering Service, Electronic Section at Bay Pines. He has been employed at Bay Pines from March 2005 to the present. At all relevant times, Dudley's first-line supervisor was David Murray, until his retirement, followed by Mark Southworth, whose supervisor was and is Eric Plaisance. Dudley is a male African-American (Black). He is the only Black in the electronics section.

## GENERAL ALLEGATIONS

### A. Race, Color and Reprisal

7. The Engineering Service at Bay Pines has approximately 157 employees. Twelve are Black. None are supervisors. In the past two years Boyd has disciplined only two (2) employees. Both of these were Black.

8. On the bases of race (Black), and color (Black), the plaintiff was treated disparately when as of March 27, 2010, the plaintiff was assigned a higher, more complex work assignment.

9. On the bases of race (Black), and color (Black), the plaintiff was treated disparately when on or about April 11, 2010, a wall was constructed that separated the plaintiff from his coworker.

10. On the bases of race (Black), and color (Black), the plaintiff was treated disparately when on May 10, 2010, his duties were changed.

11. On the bases of race (Black), color (Black), and reprisal for prior EEO activity, the plaintiff was treated disparately when on June 1, 2010, and June 23, 2010, Murray assigned the plaintiff additional work orders to process in addition to his regular duties.

12. On the bases of race (Black), color (Black), and reprisal for prior EEO activity, the plaintiff was treated disparately when on June 4, 2010, and June 25, 2010, Murray denied the plaintiff's request for overtime.

13. On the bases of race (Black), color (Black), and reprisal for prior EEO activity the plaintiff was treated disparately when on June 25, 2010, and July 13, 2010, Murray instructed the plaintiff to resolve security system problems after he was removed from that assignment.

14. On the bases of race (Black), color (Black), and reprisal for prior EEO activity the plaintiff was treated disparately when on August 26, 2010, a work order was generated by the

Police Department for the plaintiff to fix a security system after Kee deleted a mode from the system.

15. On the bases of race (Black), color (Black), and reprisal for prior EEO activity the plaintiff was treated disparately when on September 24, 2010, the plaintiff received a copy of his mid-term performance rating which had been changed from fully successful to minimally satisfactory.

16. On the bases of race (Black), color (Black), and reprisal for prior EEO activity the plaintiff was treated disparately when on November 9, 2010, Plaisance issued him a fully successful rating instead of a higher rating on his annual performance evaluation for FY10.

17. On the bases of race (Black), color (Black), and reprisal for prior EEO activity the plaintiff was treated disparately when on November 24, 2010, Southworth instructed him to remove and re-install door locks.

18. On the bases of race (Black), color (Black), and reprisal for prior EEO activity the plaintiff was treated disparately when on March 29, 2011, he was issued an admonishment.

19. On the bases of race (Black), color (Black), and reprisal for prior EEO activity the plaintiff was treated disparately when on April 29, 2011, Southworth moved the plaintiff from his work area and instructed him not to enter the server room without permission.

20. On the bases of race (Black) and color (Black), the plaintiff was subjected to discriminatory hostile work environment harassment when:

a. Since 2005, the plaintiff was assigned a higher, more complex workload.

b. In 2005, Supervisor Murray did not give the plaintiff new employee orientation.

c. In 2005, the plaintiff had no input in being assigned to the security system.

d. In 2005, the plaintiff was not advised that contractors were on campus to install equipment and provide training.

e. In 2008, Murray did not assign a temporary employee to the plaintiff to assist him in reducing a backlog of work.

f. Since 2008, and as recently as the end of May 2010, the plaintiff was blamed for unexplained problems with the security system.

g. On January 17, 2009; July 17, 2009; October 23, 2009; December 19, 2009; January 2, 2010; January 14, 2010; January 15, 2010; March 27, 2010; April 11, 2010; April 18, 2010; April 25, 2010; May 9, 2010; June 6, 2010; and June 20, 2010, processing of the plaintiff's overtime was delayed.

h. Since April 2009, the plaintiff was the only technician that was required to document his overtime.

i. In July 2009, Murray yelled to the plaintiff that he was late in front of his co-workers.

j. Around August 2009, Murray made an inappropriate comment about the plaintiff's wife.

k. Around mid-September 2009, Murray told an employee from the air conditioning shop that the plaintiff was absent without leave (AWOL).

l. In October 2009, the plaintiff had to re-configure the security system after Kee installed service packs to the system.

m. From October 2009, to July 2010, Murray ordered the plaintiff out of the shop whenever he walked into the shop.

n. On or about November 5, 2009, inaccurate information was included on the plaintiff's FY09 performance appraisal that resulted in a lower performance rating.

o. On February 4, 2010, February 13, 2010, March 28, 2010, and April 19, 2010, the plaintiff's overtime was not posted.

p. In mid-March 2010, Murray sent the plaintiff on an out-of town work assignment without travel compensation.

q. On or about March 31, 2010, the plaintiff was not advised of a training opportunity.

r. On or about April 11, 2010, a wall was constructed that separated the plaintiff from his co-worker.

s. On or about April 26, 2010, the plaintiff's training CD turned up missing.

t. On April 30, 2010, the plaintiff was not informed of issues that were discussed in a meeting.

u. On May 10, 2010, the plaintiff's duties were changed.

v. On May 11, 2010, the plaintiff was locked out of the security server room; removed from the security system and his personal belongings were left in a box in the Electronics Shop.

21. On the bases of race (Black), color (Black) and reprisal for EEO activity, the plaintiff was subjected to discriminatory hostile work environment harassment as evidenced by the following events:

a. On or about May 14, 2010, the plaintiff discovered that his request for leave under the Family Medical Leave Act (FMLA), for this mother's illness, had been

"balled up" and thrown in a box; his jacket and work orders were missing; and on June 24, 2010, the plaintiff also discovered work orders were missing.

b. On May 28, 2010, Supervisor Murray accused the plaintiff of failing to complete a work order.

c. On June 1, 2010 and June 23, 2010, Murray assigned the plaintiff additional work orders to process in addition to his regular duties.

d. On June 4, 2010, and June 25, 2010, Murray denied the plaintiff's requests for overtime.

e. On June 25, 2010, and July 13, 2010, Murray instructed the plaintiff to resolve security system problems after he was removed from that assignment.

f. As of July 7, 2010, the plaintiff no longer received information about work projects without requesting the information.

g. On July 14, 2010, the plaintiff's co-workers tampered with the security system of a nursing home door in an attempt to discredit him.

h. On July 14, 2010, Murray told Engineering Technician Schmitt that he wanted the plaintiff fired because he was creating a hostile work environment.

i. On July 15, 2010, Kee accused the plaintiff of not resolving a list of security system problems.

j. On July 20, 2010, Kee told a police officer that the plaintiff would not be working on the security system for long.

k. On July 22, 2010, April 4, 2011, and April 8, 2011, the plaintiff's access to the security system was interrupted when someone logged into the system remotely.

l. On August 26, 2010, a work order was generated by the Police Department for the plaintiff to fix a security system after Kee deleted a node from the system.

m. On September 24, 2010, the plaintiff received a copy of his mid-term performance rating which had been changed from fully successful to minimally satisfactory.

n. On October 15, 2010, Supervisor Southworth questioned a sales representative about whether he attended a training session.

o. On November 5, 2010, Bio Medical Engineer Plaisance accused the plaintiff of creating a safety issue.

p. On November 8, 2010, Kennedy told the plaintiff funds were not available to repair the security system.

q. On November 9, 2010, Plaisance issued the plaintiff a fully successful rating instead of a higher rating on his annual performance evaluation for FY10.

r. On November 10, 2010, Southworth called a contractor to fix the security system before he instructed the plaintiff to fix the problem.

s. On November 11, 2010, Plaisance spoke to the plaintiff in a derogatory manner.

t. On November 24, 2010, Southworth instructed the plaintiff to remove and reinstall the door locks.

u. On December 12, 2010, Kee interrupted the plaintiff's work by remotely logging onto the server that he was fixing (*See event k.)*

v. On December 13, 2010, the plaintiff felt harassed when Southworth, Kee and Smith tested the equipment that he had just installed.

w. On February 2, 2011, Southworth sent the plaintiff a condescending e-mail.

x. On February 24, 2011, Southworth issued the plaintiff a proposed admonishment that was sustained on March 29, 2011.

y. On March 27, 2011, Kee yelled profanities at the plaintiff, called him a derogatory name and made threatening gestures towards him.

z. On March 1, 2011, and March 23, 2011, Southworth failed to advise the plaintiff about the status of his position as lead technician for the AMAG computed I system.

aa. On March 28, 2011, Kee accused the plaintiff of threatening him.

22. On the bases of race (Black), color (Black) and reprisal for EEO activity, the plaintiff was subjected to discriminatory hostile work environment harassment as evidenced by the following events:

a. On or about June 17, 2011, Southworth discussed the allegations in the plaintiff's EEO complaint with co-worker Smith.

b. On or about June 17, 2011, co-workers Smith and Plaisance had a discussion about plaintiff's EEO complaint.

c. On or about June 17, 2011, Southworth intentionally excluded the plaintiff form attending a meeting.

d. On or about August 18, 2011, Southworth, co-workers Kee and Smith tampered with equipment that the plaintiff was working on.

e. On or about July 25, 2011, and on or about August 19, 2011, meetings took place with Jim Higginbotham, the Assistant Senior Resident Engineer from the Office of Construction and Facilities Management along with private contractors. This meeting was to discuss the set up of the access control and the camera systems at Ft. Myers new Out-Patient Clinic. Schmitt from Engineering Projects, supervisor, Southworth, and non protected co-workers, Kee, Bob Adams and Smith went to this meeting without notifying the plaintiff of the scheduled date.

f. On or about July 25, 2011, and August 19, 2011, the plaintiff's supervisor and co-workers isolated him from participating in any meetings pertaining to funded projects, putting him at a disadvantage in the work place for higher evaluations and promotions.

g. On or about July 7, 2011, co-worker Smith logged on to the computer system remotely while the plaintiff was working on the system.

h. On or about September 1, 2011, the plaintiff was charged AWOL.

**B. Pattern, Practice and Culture of Retaliation**

23. The Defendant has engaged in a pattern and practice of retaliation and hostile retaliatory work environment and has maintained a culture of retaliation and hostile retaliatory work environment and has allowed a culture of retaliation and hostile retaliatory environment to be maintained with respect to Equal Employment Opportunity ("EEO") activity, including making EEO complaints, participating as a witness on behalf of other parties' EEO complaints and objecting to or opposing discriminatory and retaliatory conduct.

24. For many years various high-ranking administrators, managers and supervisors at Bay Pines have punished employees or permitted or overlooked the hostile treatment of

employees who made EEO complaints or who objected to or opposed discrimination or retaliation. This includes Director Hopkins and Dr. George Van Buskirk ("Van Buskirk"), the Chief of Staff with line authority over the several medical services within the hospital, and Dr. Lithium Lin ("Lin"), the Chief of the Medicine Service at relevant times. Such administrators have attempted to deter the making of EEO complaints by retaliating against or overlooking retaliation against employees who have made EEO complaints or have opposed discrimination or retaliation. For example, Van Buskirk, the Chief of Staff, and Lin, the Chief of the Medicine Service, with the knowledge, assistance and support of Hopkins, decided to and attempted to deter the filing of employment complaints by retaliating against those who engaged in EEO activity. To this end Lin and Van Buskirk, with the actual or tacit support of Hopkins, undertook a course of retaliation against numerous Bay Pines employees for engaging in EEO and other protected activity. Such retaliation included, by way of example, various acts to harm an employee's reputation and career; various types of discipline and proposed discipline, including termination, suspension, reprimand and counseling; denying leadership positions; changing duties and office assignments; seeking information to discipline and terminate employees; seeking out employees to assist in gathering derogatory information about employees, including the solicitation of Reports of Contact, which are written complaints by one employee against another and are used as a basis for steps in discipline; spying on employees; using unjust criticism and criteria and withholding awards until an employee agrees to provide information derogatory of other employees; rifling through employees' files and documents; creating and maintaining false records about employees; removing employees from committees; reducing or limiting physician's medical privileges and credentialing; subjecting physicians to inappropriate fitness-for-duty exams; failing to follow required procedural requirements for adverse or

disciplinary actions; subjecting employees to lower evaluations, inappropriate pay and bonuses and increasingly higher levels of discipline up to suspension without pay and termination; and using committees to insulate the administrators from appearing to have engaged in discriminatory or retaliatory conduct.

25. As part of the pattern, practice and culture of retaliation and hostile retaliatory work environment, various administrators, managers and supervisors at Bay Pines, including Hopkins, Van Buskirk and Lin, have developed and maintained a reputation for retaliation against those who engage in EEO activity or do not join in their efforts to insulate their management style including their willingness to retaliate.

26. As a result of the pattern, practice and culture of retaliation and hostile retaliatory work environment, a fear of retaliation has developed at Bay Pines. As a result, a number of very good employees are afraid to come forward with information they have concerning discriminatory or retaliatory conduct and a number of very good employees have chosen to leave Bay Pines.

27. As part of the pattern, practice and culture of retaliation and hostile retaliatory work environment, concerns about retaliation are ignored and not investigated. Such conduct, omissions and failure to investigate reflect a continuing disregard of the laws and rules concerning retaliation, serve to intimidate, cause fear that retaliation will not be addressed and will be tolerated at Bay Pines, and maintain the culture of retaliation and a hostile retaliatory work environment.

28. In July 2009, following a jury trial in the U.S. District Court for the Middle District of Florida (*Fiedler, et. al. v. Eric Shinseki, Secretary, Department of Veterans Affairs*; case number 8:07-cv-1524), a jury found that Bay Pines had retaliated against three doctors and

an administrative officer for EEO activity and awarded damages to the plaintiffs. The complaint alleged, and the case was presented and argued as involving a systemic scheme at Bay Pines perpetrated by Hopkins, Van Buskirk and Lin to retaliate against employees who engaged in EEO activity in order to punish those employees and to deter others from engaging in EEO activity. On November 23, 2009 the federal court in that case entered an order declaring that "there is no showing permitting a conclusion that the discriminatory conduct will not recur or that the circumstances have changed such that the effects of the retaliatory hostile work environment [at Bay Pines] have been eliminated" and that "[i]ndeed, it appears that no changes have been made at all at Bay Pines VA in response to the verdict in this case." The court's order also granted injunctive and equitable relief including enjoining Bay Pines from "continuing or maintaining any policy, custom, usage or practice of retaliation, retaliatory harassment, or retaliatory hostile work environment" at Bay Pines and ordered "remedial instruction on work place discrimination, with particular focus on retaliation and retaliatory harassment in the work place, and hostile work environment for, *inter alia*, Hopkins, Van Buskirk and Lin.

29. Despite the foregoing verdict and November 23, 2009 federal court order, Bay Pines or the VA has engaged in conduct and omissions since the verdict which reflect a continuing disregard of the laws and rules concerning retaliation, serve to intimidate, cause fear of retaliation, cause fear that retaliation will not be addressed and will be tolerated at Bay Pines, and maintain and further the culture of retaliation and retaliatory hostile work environment.

30. Hopkins publicly stated that he felt there were a lot of EEO's at Bay Pines and he wanted to stop them and therefore was not going to settle any. In addition, at a meeting in or about April or May 2009, Hopkins told Police Service managers and supervisors not to worry about employee claims because he would always support managers, not employees. In addition

to constituting direct evidence of retaliation, such comments by administrators and by managers are themselves intimidating, cause fear of retaliation, create a hostile retaliatory work environment, and maintain the culture of retaliation and retaliatory hostile work environment.

31. Brown and Engineering supervisors were aware of relevant EEO activity by the plaintiff when they took the adverse actions against Dudley.

32. Dudley learned of various adverse and retaliatory actions taken against other Bay Pines employees, which increased the intimidation, fear of retaliation and hostile retaliatory work environment, but attempted to address his concerns in accordance with the rules.

33. Dudley made an informal EEO complaint with ORM on or about May 11, 2010. Dudley filed a formal EEO complaint (Case No. 200I-0516-2010103075 on August 3, 2010. Dudley has hired attorneys to represent him and agreed to pay legal fees.

**Count I**

**(Race and Color Discrimination)**

34. Plaintiff, Mathis Dudley, sues Eric K. Shinseki, as Secretary of the Department of Veterans Affairs for racial discrimination under Title VII.

35. Plaintiff incorporates and realleges paragraphs 1 through 33.

36. As a direct and proximate result of the foregoing conduct, Plaintiff has been denied equal employment opportunity for wages, promotion, and other terms and conditions of employment by the Defendant because of race (Black) and color (Black).

37. The above discriminatory actions were taken by the supervisory personnel within the VA in order to deprive the Plaintiff of employment and other employment action because of his race and color.

38. The Defendant has intentionally maintained these discriminatory and unlawful practices to the detriment of the Plaintiff.

39. The above-referenced actions have created an intolerable hostile work environment.

40. The Defendant at all relevant times knew, or should have known, of the above-referenced discrimination against the Plaintiff.

41. The Defendant has failed to take necessary action to prevent or correct the complaint of discrimination and, in fact, ratified such conduct.

42. The Defendant, through the Plaintiff's managers and supervisors has engaged in, directed or ratified conduct and denied and frustrated the Plaintiff's efforts to obtain relief under Title VII.

43. The Defendant, through acceptance of the complained of conduct, has fostered an attitude among supervisors at Bay Pines that racial discrimination and color discrimination are acceptable employment practices.

44. Because of the willful actions of the Defendant and its administrators, managers and supervisors, and as a proximate cause thereof, the Plaintiff has been and continues to be denied his rights to equal employment opportunity in violation of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*

45. As a result of the foregoing, the Plaintiff has been damaged. Those damages include, but are not limited to loss of pay; loss of benefits; loss of an amicable working environment; loss of career and professional opportunities; payment of attorneys' fees and legal costs; harm to professional reputation; and humiliation, degradation, embarrassment, and severe

emotional suffering and distress. Plaintiff will continue in the future to suffer these damages absent relief from this Court.

46. Plaintiff has satisfied all conditions precedent to filing of this suit or he has been prevented by the Defendant from satisfying such conditions precedent, or he is excused under the law from satisfying any other conditions.

WHEREFORE, Plaintiff requests prospective relief, judgment for damages, attorneys' fees and costs, and such other relief as this Court deems just and proper and for a trial by jury on all issues so triable.

**Count II**

**(Retaliation)**

47. Plaintiff, Mathis Dudley, sues Eric K. Shinseki, as the Secretary of Veterans Affairs, for retaliation under Title VII.

48. Plaintiff incorporates and realleges paragraphs 1 through 33.

49. Plaintiff engaged in EEO activity which is protected under Title VII.

50. The Defendant was aware of each of the Plaintiff's protected or EEO activities under Title VII.

51. The aforesaid adverse employment actions; other adverse actions; misconduct; and other conduct, acts and omissions to the Plaintiff's detriment; as well as other adverse employment actions and conduct, were all taken (or failed to be taken) by administrators and managing and supervisory personnel at Bay Pines in retaliation for the protected or EEO activity of the Plaintiff including those set forth above.

52. As a direct and proximate result of the protected or EEO activity, Plaintiff has suffered the adverse employment actions and other adverse actions, including these set forth above.

53. Bay Pines has intentionally maintained these retaliatory and unlawful practices to the detriment of its employees.

54. The Defendant at all relevant times knew or should have known of the retaliatory actions being taken against the Plaintiff.

55. The Defendant failed to take necessary action to prevent or correct the retaliatory actions being taken and, in fact, ratified such conduct.

56. The Defendant, through the supervisors of the Plaintiff, including Hopkins, Brown, Boyd and others, has engaged in, directed, and/or ratified retaliatory conduct and has frustrated the Plaintiff's efforts to obtain relief under Title VII.

57. The Defendant, through acceptance of such conduct, has fostered an attitude among administrators, managers and supervisors in Bay Pines that retaliation against employees in order to discourage protected EEO activity is an acceptable employment practice by administrators, managers and supervisors at Bay Pines.

58. Because of the willful actions of the Defendant and its administrators, managers and supervisors, and as a proximate cause thereof, Plaintiff has been and continues to be denied his right to equal employment opportunity in violation of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*.

59. As a result of the foregoing, Plaintiff has been damaged. Such damages include, but are not limited to loss of pay; loss of benefits; payment of attorneys' fees and legal costs; loss of an amicable work environment; loss of career and professional opportunities; harm to

professional reputation; and humiliation, anxiety, degradation, embarrassment, and severe emotional suffering and distress. Plaintiff will continue in the future to suffer the same damages absent relief from this Court.

60. Plaintiff has satisfied all conditions precedent to the filing of this suit or has been prevented by the Defendant from satisfying such conditions or is excused under the law from satisfying any other conditions.

WHEREFORE, Plaintiff requests prospective relief, a judgment for damages, attorneys' fees and costs and such other and further relief as this Court deems just and proper and for a trial by jury on all issues so triable.

**Count III**

**(Hostile Work Environment)**

61. Plaintiff, Mathis Dudley, sues Eric K. Shinseki, as the Secretary of Veterans Affairs, for retaliatory hostile work environment.

62. Plaintiff incorporates and realleges paragraphs 1 through 33 and 49 through 59.

63. The aforesaid actions and conduct have created an intolerable hostile work environment.

64. As a result of the foregoing, Plaintiff has been damaged. Such damages include, but are not limited to payment of attorneys' fees and legal costs, loss of an amicable work environment, humiliation, anxiety, degradation, embarrassment, physical injury or illness, and severe emotional suffering and distress. Plaintiff will continue in the future to suffer the same damages absent relief from this Court.

65. Plaintiff has satisfied all conditions precedent to the filing of this suit or has been prevented by the Defendant from satisfying such conditions or is excused under the law from satisfying any other conditions.

WHEREFORE, Plaintiff requests prospective relief, a judgment for damages, attorneys' fees and costs and such other and further relief as this Court deems just and proper and for a trial by jury on all issues so triable.

**Count IV**

**(Injunctive Relief)**

66. Plaintiff, Mathis Dudley, sues Defendant Eric K. Shinseki, as Secretary of the Department of Veterans Affairs.

67. Plaintiff incorporates and realleges paragraphs 1 through 65.

68. Unless the above practices are enjoined, Plaintiff will suffer irreparable harm.

69. There is: (1) a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless an injunction issues; (3) the threatened injury to the Plaintiff is greater than any damage the proposed injunction may cause the opposing party; and (4) the injunction, is issued, will not disserve the public interest.

70. Plaintiff requests the Court award his attorneys' fees and costs and enter preliminary and permanent injunctions enjoining the following practices, actions and conduct:

a. Violating Title VII or the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.,* as described above including retaliation against Plaintiff for protected or EEO activity and discrimination based on gender and race.

b. Such other practices, actions or conduct that the court deems appropriate and proper to enjoin.

WHEREFORE, Plaintiff demands trial by jury of all issues so triable and such other and further relief as the Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff, Mathis Dudley, hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

Joseph D. Magri
Florida Bar No.: 0814490
Merkle Magri & Meythaler, P.A.
5415 Mariner St., Suite 103
Tampa, FL 33609
Tel. (813) 281-9000
Fax.: (813) 281-2223
Email: jmagri@merklemagri.com